UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TROY L.,**

    **Plaintiff,**

    v.                                 Civil Action 2:21-cv-4051
                                      Judge Edmund A. Sargus, Jr.
                                      Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Troy L., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 13), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's determination.

### I.     BACKGROUND

Plaintiff protectively filed an application for a disability insurance benefits ("DIB") on December 17, 2018, alleging that he became disabled on January 1, 2014, but he later amended his alleged onset date to January 22, 2019. (R. 13, 37–38, 139–44.) After Plaintiff's application was denied initially and on reconsideration, Administrative Law Judge Deborah F. Sanders (the

"ALJ") held a hearing on August 5, 2020. (R. 31–58.) Plaintiff, represented by counsel, appeared and testified, as did a vocational expert ("VE"). On October 20, 2020, the ALJ issued an unfavorable determination. (R. 9–29.) On June 2, 2021, the Appeals Council denied Plaintiff's Request for Review, making the ALJ's unfavorable determination final for purposes of judicial review. (R. 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In his Statement of Errors, (ECF No. 9), Plaintiff advances two contentions of error: (1) the ALJ failed to properly evaluate medical opinion evidence and prior administrative finding and (2) the ALJ and Appeals Council lacked authority to issue a disability determination because the statute governing removal of the Commissioner of Social Security is unconstitutional.

## II.  THE ALJ'S DECISION

The ALJ issued her decision on October 20, 2020. (R. 9–29.) First, the ALJ found that Plaintiff met the insured status requirements for disability insurance benefits through December 31, 2023. (R. 14.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff

---

[1] The Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

had not engaged in substantial gainful activity since his amended alleged onset date of January 22, 2019. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy – status/post lumbar fusion; herniated nucleus pulposus with myelopathy; mild spinal stenosis; spondylolisthesis; obesity; and mild hallux valgus with severe degenerative changes of the first metatarsal phalangeal joint and a dorsal osteophyte. (R. 15.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16.) The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally push, pull, and operate foot controls with the right lower extremity; he could occasionally climb ramps and stairs; he should avoid climbing ladders, ropes, or scaffolds; he could occasionally balance, stoop, kneel, crouch, and crawl; he could occasionally reach overhead with the bilateral upper extremities; he should avoid workplace hazards including working at unprotected heights or around dangerous machinery; and he should avoid the operation of the commercial motor vehicle.

(R. 17.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (R. 23.) At step five, relying on testimony from the VE, the ALJ determined that given Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 24.) Therefore, the ALJ determined that Plaintiff was not disabled under the Social Security Act. (R. 25.)

### III.  RELEVANT TREATMENT AND OTHER RECORDS

Although Plaintiff alleges that he became disabled on January 22, 2019, the majority of

---

[2] A claimant's residual functional capacity ("RFC") is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

the record consists of medical documents generated prior to that date. Those pre-onset records reveal that Plaintiff treated with his primary care physician, Dr. Schwartz, for neck and lumbar back pain. Dr. Schwartz's examinations of Plaintiff's cervical spine prior to the date of onset routinely revealed that Plaintiff had listing to the right; and limited range of motion and pain with flexion, extension, left and right lateral bending, and left and right lateral rotation. (R. at 275, 277, 279, 281, 283, 286, 289, 292, 295, 298, 301, 306, 309, 312, 316–17, 320, 331, 327, 334, 337, 342. Although an examination on October 4, 2018, found that Plaintiff had a full range of motion in his neck without pain (R. at 345), an examination on December 27, 2018, again found that Plaintiff had limited range of motion in his neck (R. at 363).

Likewise, Dr. Schwartz's examinations of Plaintiff's lumbar spine before January 22, 2019, routinely revealed that Plaintiff's had listing to the left (R. at 277, 279, 281, 283, 286, 289, 292, 295, 298, 301, 306, 309, 312, 317, 320, 331, 327, 334, 337, 342); his range of motion was both restricted and painful with flexion (R. at 275); he had restricted range of motion with flexion and pain with flexion, extension, and transfer from sit to stand (R. at 277, 279, 281, 283, 286, 289, 292, 295, 298, 301, 306, 313, 317, 320–21, 331, 327, 334, 337, 342); or that he had limited range of motion in the lumbar spine and pain with transfer to sit/stand and stand/sit (R. at 363). Lumbar examinations before January 22, 2019, also found that Plaintiff had positive straight leg raising tests. (R. at 277, 279, 281, 283, 286, 288, 292, 295, 298, 301, 306, 310, 313, 317, 321, 331, 327, 334, 337, 342.)

Nevertheless, during those same pre-onset date examinations, Dr. Schwartz routinely found that Plaintiff's paravertebral muscles were normal and that no spinal process tenderness was noted. (R. at 275, 277, 279, 281, 283, 286, 289, 292, 295, 298, 301, 306, 309, 312, 317, 320–21, 331, 327, 334, 337, 342.) Prior to the alleged date of onset, Dr. Schwartz also regularly

4

wrote that Plaintiff ambulated to the examination room without assistance. (R. at 275, 277, 278, 281, 283, 286, 289, 292, 295, 298, 301, 306, 309, 312, 316, 320, 331, 327, 334, 337, 342, 345, 347, 359.) In addition, Dr. Schwartz noted that Plaintiff's heel and toe walk was normal during these pre-onset date examinations. (R. at 277, 279. 281, 283, 286, 289, 292, 295, 298, 301, 306, 310, 313, 317, 320–21, 331, 327, 334, 337, 342, 347, 361.) And Dr. Schwartz noted, before the date of onset, that Plaintiff was also able to sit comfortably on the examination table without difficulty or evidence of pain. (*Id*.) Plaintiff also regularly reported to Dr. Schwartz that he received at least some benefit from his medication regime. (*See e.g*., R. at 302, 332, 343.)

After the date of onset, Dr. Schwartz examined Plaintiff on two occasions and again found that Plaintiff ambulated to the examination room without assistance and sat on the examination table without difficulty or evidence of pain. (R. at 367 369.) During one of these post-onset date examinations, Dr. Schwartz noted again that Plaintiff was able to heel and toe walk. (R. at 367.) Plaintiff also again reported that although he still had significant pain and dysfunction, his pain control was attenuated with his current medication regime. (R. at 367.)

Plaintiff also sought treatment from a podiatrist for right foot pain after the date of onset. At that time, Plaintiff reported that he exercised by walking. (R. at 372.) Upon examination, the podiatrist found that Plaintiff had normal posture and gait. (R. at 373.) The podiatrist further found that Plaintiff's conventional walking was normal, with normal heel strike, stride length, swing through, toe off, and symmetry. (*Id*.)

Notably, both before and after the date of onset, Plaintiff reported that he continued to work. For instance, prior to the date of onset, Plaintiff routinely reported that he was productive at work (R. at 286, 289, 292, 299, 302, 306, 310) or that he was able to work through his pain (R. at 295). Plaintiff also reported that he continued to do hard labor as a machinist on October 4,

5

2018. (R. at 345.) On September 20, 2019—only nine months after the January 22, 2019 onset date—Plaintiff reported to a state agency consultant that he had never been out of work for longer than a year. (R. at 387.) Plaintiff additionally indicated at that time that he had most recently worked about three weeks prior to that consultative interview. (*Id*.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

As previously explained, Plaintiff contends that the ALJ erred when analyzing medical evidence and prior administrative findings.[3] (Pl.'s Statement of Errors 7, ECF No. 9.) Specifically, Plaintiff contends that the ALJ "improperly discredited" opinions from Dr. Norman A. Schwartz, M.D., Plaintiff's primary care physician, and the prior administrative findings from Drs. Gerald Kylop, M.D., and Gail Mutchler, M.D., two state agency reviewers. (Pl.'s Statement of Errors 8, 11, ECF No. 9.) He additionally contends that he was deprived of a valid administrative adjudicatory process because the statute governing removal of the Commissioner violates separation of powers principles. (*Id.* at PageID # 443–47.) The undersigned addresses these contentions of error in turn and finds that they lack merit.

### A. Opinion Evidence and Prior Administrative Findings

Because Plaintiff's claim was filed after March 27, 2017, his application is subject to newer regulations governing how an ALJ must evaluate evidence. *See* 20 C.F.R. § 404.1520c. Under the new regulations, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s)[4] including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider the following five factors when evaluating medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the

---

[3] Because Plaintiff's contention of error pertains only to his physical impairments, the undersigned's discussion and analysis are limited to the same.
[4] A prior administrative finding is defined as a finding about a medical issue made by a Federal or State agency medical or psychological consultant at a prior level of review. *See* §§ 404.1513(a)(2), (5); 416.913(a)(2), (5).

7

claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's] disability program s policies and evidentiary requirements." § 404.1520c(c)(1)–(5). Of the five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. § 404.1520c(b)(2). Although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." § 404.1520c(b)(3). In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each opinion individually. § 404.1520c(b)(1). Instead, the ALJ may "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

### 1. Dr. Schwartz's Medical Opinions

Plaintiff asserts that the ALJ erred when evaluating opinions from his primary care physician, Dr. Norman A. Schwartz, M.D. (Pl.'s Statement of Errors 9–10, ECF No. 9; Pl.'s Reply 2, ECF No. 13.) This assertion lack merit.

The ALJ described Dr. Schwartz's May 2019, August 2019, January 2020, and July 2020 opinions as follows.[5]

> Next, I considered the opinions of Dr. Norman A. Schwartz, the claimant's primary treating source, who prepared a medical opinion statement on May 23, 2019; he diagnosed the claimant with Cervical Spinal Stenosis with Radiculopathy and

---

[5] Plaintiff cites only to the opinions Dr. Schwartz offered on these four dates. (Pl.'s Reply, 2–3 ECF 13.)

> Myelopathy, Lumbar Spinal Stenosis with Radiculopathy and Myelopathy and Degenerative Disc Disease of the Cervical and Lumbar Spine (5F). Dr. Schwartz opined the claimant would be off task for 25% or more of the workday, he could sit for a total of 3 hours in an 8-hour workday, and that he could stand and walk for a total of 2 hours in an 8-hour workday (*Id*. at 2-3). Further, he limited the claimant to being able to lift 1 to 5 pounds on an occasional basis and opined that the claimant would be absent from work more than 3 times a month (*Id*. at 4). Additionally, on August 13, 2019, he opined that the claimant, a primary care patient for 15 years, has disabling diagnoses including Cervical Spinal Stenosis with Myelopathy or Radiculopathy and Lumbar Spinal Stenosis with Radiculopathy (7F/1). Moreover, on January 23, 2020, Dr. Schwartz drafted a letter and opined that the claimant is disabled secondary to his cervical and lumbar spinal disease with their secondary sequelae of neuropathy and myopathy (9F). In addition, I considered the medical opinion statement prepared by Dr. Schwartz on July 16, 2020, where he opined the claimant could lift/carry less than 10 pounds for less than one third of the day, he could stand and walk for less than 1 hour in an 8- hour workday, and that he is medically disabled, due to the progressive nature of his degenerative spinal conditions (11F).

(R. at 21.)  The ALJ then determined that those opinions were not persuasive and explained his reasons for doing so.

> Accordingly, I find Dr. Schwartz's opinions to be nonpersuasive, as said opinions are neither consistent with nor supported by the evidence of record, including the above-noted objective and clinical findings, as the claimant's physical examination findings are regular[ly] noted as being grossly normal with a normal gait. Moreover, I note that the evidence of record fails to document recurring emergency care or inpatient hospitalizations for physical impairments. Further, the above-summarized evidence suggests that the claimant's neck and back pain are effectively managed with prescribed medication.

(R. 21–22.)  As this discussion demonstrates, the ALJ determined that the extreme limitations opined by Dr. Schwartz, including, for instance, the extreme walking and sitting limitations that he opined, were not supported or consistent with the record for several reasons.

First, the ALJ determined that Dr. Schwartz's opined limitations were unsupported and inconsistent because physical examination findings, including Dr. Schwartz's own findings, were grossly normal with normal gait. (R. at 21–22.) Substantial evidence supports that determination. During pre-onset date examinations, Dr. Schwartz routinely found that Plaintiff's

9

paravertebral muscles were normal and that no spinal process tenderness was noted. (R. at 275, 277, 279, 281, 283, 286, 289, 292, 295, 298, 301, 306, 309, 312, 317, 320–21, 331, 327, 334, 337, 342.) Prior to the alleged date of onset, Dr. Schwartz also regularly wrote that Plaintiff ambulated to the examination room without assistance. (R. at 275, 277, 278, 281, 283, 286, 289, 292, 295, 298, 301, 306, 309, 312, 316, 320, 331, 327, 334, 337, 342, 345, 347, 359.) In addition, Dr. Schwartz noted that Plaintiff's heel and toe walk was normal during these pre-onset date examinations. (R. at 277, 279. 281, 283, 286, 289, 292, 295, 298, 301, 306, 310, 313, 317, 320–21, 331, 327, 334, 337, 342, 347, 361.) And Dr. Schwartz noted, before the date of onset, that Plaintiff was also able to sit comfortably on the examination table without difficulty or evidence of pain. (*Id.*)

It appears that Dr. Schwartz examined Plaintiff on only two occasions after the January 22, 2019 onset date. During both of those examinations, Dr. Schwartz again noted that Plaintiff ambulated to the examination room without assistance and that he was able to sit comfortably on the examination table without difficulty or evidence of pain. (R. at 367, 369.) During one of those two visits, Dr. Schwartz also noted that Plaintiff was able to heel and toe walk. (R. at 367.)

Records from other providers also undermined the extreme limitations opined by Dr. Schwartz. An examination by another provider on March 25, 2017—before the date of onset— found that Plaintiff's gait was normal. (R. at 266.) An examination by a podiatrist on May 20, 2019—after the date of onset—found that Plaintiff had normal posture and gait and that his conventional walking was normal with normal heel strike, stride length, swing through, toe off and symmetric. (R. at 373.) Accordingly, the ALJ did not err by determining that Dr. Schwartz's opinions were unsupported and inconsistent because physical examination findings were grossly normal with normal gait.

10

Second, the ALJ determined that Dr. Schwartz's opinions were unsupported and inconsistent because the record evidence suggested that Plaintiff's neck and back pain were effectively managed by medication. (R. at 22.) The record provides support for that determination as well. Dr. Schwartz's notes reflect that during appointments prior to January 22, 2019, Plaintiff variously reported that he was getting "good relief" from his medications (R. at 281); that although he still had significant pain with radiculopathy, his pain was more tolerable with medications (R. at 286, 289, 292, 299, 301–02, 306, 310, 313, ); that he got some relief from his medications (R. at 295); or that he was getting adequate pain control—although not completely resolved it was more bearable (R. at 320, 322, 328, 335, 338, 343). Dr. Schwartz's notes reflect that during one of two office examinations after the alleged onset date, Plaintiff reported that he still had significant pain and dysfunction, but that his pain control was attenuated with his current medication regime. (R. at 367.) Accordingly, the ALJ did not err when determining that Dr. Schwartz's opinions were unsupported and inconsistent for this reason.

The ALJ also determined that the extreme limitations opined by Dr. Schwartz were not supported and inconsistent because the record failed to document recurring emergency care or inpatient hospitalization for physical impairments. (R. at 22.) Substantial evidence supports that determination. The record is generally bereft of records documenting that Plaintiff sought such care. Although the record contains notes from when Plaintiff sought treatment in an emergency room on November 8, 2018, those notes relate to an apparent one-time event where Plaintiff reported a sudden increased heart rate while at work. (R. 247–251.) These records do not, however, relate to Plaintiff's neck or back pain, which is the crux of his disability application.

In short, the ALJ offered record-based reasons for determining that Dr. Schwartz's opined limitations were unsupported and inconsistent. Because those reasons are supported by

11

the record, the undersigned does not find that the ALJ committed reversible error when she conducted her supportability or consistency analysis.

Plaintiff nevertheless appears to contend that the ALJ failed to satisfy the articulation requirement because she failed to adequately explain her supportability analysis and only peripherally explained her consistency analysis. (Pl.'s Statement of Errors 9, 10, ECF 9.) The undersigned notes that although the new regulations are less demanding than the former rules governing the evaluation of medical opinions and findings, "they still require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 20-01364, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). As one Court recently explained:

> The new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). An "ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

*Hardy v. Comm'r of Soc. Sec.*, No. 20-101918, 2021 WL 3702170, at *4 (E.D. Mich. Aug. 13, 2021).

Here, the ALJ provided a coherent explanation sufficient to provide a rationale for this Court to review. The ALJ explained that Dr. Schwartz' opinions were "neither consistent with or supported by the evidence of record, including the above-noted objective and clinical findings . . . ." (R. at 21.) The "above-noted objective and clinical findings" referenced by the ALJ included over two pages of writing summarizing the medical records from Dr. Schwartz and other providers. (R. at 18–20.) The ALJ also described several record-based reasons why the

12

the opinions were not supported or consistent with those summarized records. This was sufficient. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's decision should be read as a whole); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion).

Plaintiff also asserts that the ALJ's analysis is lacking because the ALJ failed to discuss the fact that Dr. Schwartz had a long-term treating relationship with Plaintiff that included frequent treatment sessions. Although an ALJ must consider a number of factors when evaluating medical opinion evidence, including the relationship between a medical source and a claimant, an ALJ is not required to discuss all of those factors. § 404.1520(1)–(5); § 404.1520c(b)(2). Instead, an ALJ is only required to discuss the supportability and consistency factors. § 404.1520c(b)(2). Here, the ALJ did just that.

In addition, Plaintiff points to other of Dr. Schwartz's examination findings and asserts that they supported his opinions. But even if some of Dr. Schwartz's examination findings might have supported a more restrictive RFC, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citations omitted). Such is the case here.

In short, the ALJ determined that Dr. Schwartz's opinions were unsupported and inconsistent with the record. The ALJ adequately discussed her record-based reasons for that determination. Plaintiff's assertion to the contrary lacks merit.

### 2. Prior Administrative Findings from State Agency Reviewers

Plaintiff next asserts that the ALJ erred in her evaluation of the prior administrative

findings from the state agency reviewers, Dr. Gerald Kylop, M.D., and Dr. Gail Mutchler, M.D. This assertion also lacks merit.

> The ALJ discussed the findings from Drs. Kylop and Mutchler as follows:
>
> Moreover, I considered the opinion of the State agency medical consultant (2A), who opined that the claimant retains the ability to perform work at the sedentary level of exertion with exertional and postural limitations. Accordingly, I find the medical consultant's opinion to be nonpersuasive, as said opinion is neither consistent with nor supported by the updated record received at the hearing level. Alternatively, I find that the above-stated RFC adequately accounts for [] and accommodates the claimant's chronic pain symptoms, by limiting him to performing work at the light level of exertion, consistent with the limitations stated therein.
>
> Last, I considered the opinion of the State agency medical consultant (4A), who opined that the claimant retains the ability to perform work at the sedentary level of exertion with exertional, postural, manipulative, and environmental limitations. Accordingly, I find the medical consultant's opinion to be non-persuasive, as said opinion is neither consistent with nor supported by the updated record received at the hearing level, which documents a history of conservative care for the claimant's chronic pain complaints. As stated above, I find that the above-stated RFC adequately accounts for and accommodates the claimant's chronic pain symptoms, by limiting him to performing work at the light level of exertion, consistent with the limitations stated therein.

(R. at 22.) As this discussion demonstrates, the ALJ determined that the findings were not supportable or consistent with the evidence that was received after Drs. Kyler and Mutchler reviewed Plaintiff's file, including evidence that documented a history of only conservative care.

Substantial evidence supports that determination. First, Dr. Mutchler completed a file review on August 27, 2019. (R. at 384.) It appears that after that date, Plaintiff had two ten-minute telemedicine visits with a doctor at a pain management clinic (R. at 394, 393), but that he was not examined or treated by any other physician, including his primary care physician, Dr. Schwartz.

Moreover, during the hearing, the ALJ noted that during office visits with Dr. Schwartz, Plaintiff reported that several neurosurgeons had told him that his lumbar spine was inoperable.

14

(R. at 48.) The ALJ further noted that the record failed to include any documentation indicating that neurosurgeons had provided Plaintiff with such information. (*Id*.) Indeed, the ALJ stated at the time of the hearing that the record contained no "MRIs or anything like that of the lumbar spine" aside from a 2016 MRI that was "unremarkable." (*Id*.) Consequently, the ALJ left the record open for Plaintiff to provide supplemental evidence in connection with this testimony. (R. 48–50.)

Plaintiff later supplied an MRI of the cervical spine dated July 12, 2019, and an updated MRI of the lumbar spine dated August 11, 2021. (R. at 240–42; 403–08.) The ALJ offered a thorough discussion of this evidence in her decision. (R. at 18–20.) Specifically, the ALJ accurately wrote that the July 2019 MRI of Plaintiff's cervical spine showed moderate degenerative stenosis of the cervical spine, most prominent at the C5-C6 levels, with at least moderate grade foraminal stenosis at both disc levels, resulting in abutment of the existing nerve root and impingement of the right C6 and both C7 nerve roots. (R. at 19–20; 406.) In addition, the ALJ accurately wrote that the August 2021 MRI of Plaintiff's lumbar spine revealed mild bilateral neurostenosis stenosis at L3-4; an abnormal bony signal extending from the superior endplate of L4 anteriorly into the vertebral body where there may be fracture present, that may have been subacute; an abnormal signal in the left lamina at L5-S1 where there may have been prior fracture; and a cystic legion in the subcutaneous tissues behind the L1 vertebra which was most likely a sebaceous cyst. (R. at 20; *Id*.) Notably, none of this evidence with which Plaintiff supplemented the record indicates that a neurosurgeon determined that Plaintiff's lumbar spine impairments are "inoperable." (R. 405–08.)

In short, the ALJ determined that the prior administrative findings from the state agency reviewers were not supported or consistent with evidence received after their review. Substantial

15

evidence supports that determination. Accordingly, the undersigned does not find that the ALJ committed reversible error when evaluating those findings. Plaintiff's contention of error is therefore not well taken.

**B.       Plaintiff's Constitutional Claim**

In his second contention of error, Plaintiff argues that the statute governing the Commissioner of Social Security's removal from office is unconstitutional, and that this renders the ALJ's decision in this matter invalid. (Pl.'s Statement of Errors 13, ECF No. 9; *see also* Pl.'s Reply 5, ECF No. 13.) The undersigned disagrees.

As an initial matter, Plaintiff's constitutional claim is procedurally improper. Plaintiff's Complaint does not include any constitutional claims. (*See* ECF No. 4.) Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint need not provide "detailed factual allegations," at a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, the United States Supreme Court case upon which Plaintiff bases his constitutional claim was decided on June 20, 2020. Yet Plaintiff gave no notice, let alone fair notice, of his constitutional claim in his August 2, 2021 Complaint. *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that plaintiff failed to comply with Rule 8 by failing to plead separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5173-MLP, 2021 WL 5371394, at * 6–7 (W.D. Wash. Nov. 18, 2021) (same). For that reason, Plaintiff failed to comply with Rule 8 such that his constitutional claim is not properly before the Court.

16

Nevertheless, as explained below, Plaintiff's constitutional claim would fail on the merits.

Plaintiff relies on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020). In *Seila Law*, the United States Supreme Court held that the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Id.* at 2197. Because 42 U.S.C. § 902(a)(3), the statute governing the Commissioner of Social Security's removal, contains a similar restriction on the President's ability to remove the Commissioner except for cause, Plaintiff contends that § 902(a)(3) also unconstitutionally violates the separation of powers. As a result, Plaintiff argues that a new hearing is required "before an ALJ who does not suffer from the unconstitutional taint" of having decided this claim when she "had no lawful authority to hear or decide" it. (Pl.'s Statement of Errors 16–17, ECF No. 9.)

However, even assuming § 902(a)(3)'s removal provision is unconstitutional, remand is not necessarily required. In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), decided the year after *Seila Law*, the Supreme Court considered a similar statute governing removal of Directors of the Federal Housing Finance Agency ("FHFA"). The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787 (emphasis in original); *see also id.* at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)).

17

Instead, to obtain reversal of an agency decision, a plaintiff would need to demonstrate "compensable harm" flowing from the unconstitutional removal clause. *See id.* at 1788–89 (remanding for further proceedings to determine whether compensable harm to the plaintiff occurred due to the President's inability to remove a Director of the Federal Housing Finance Agency except for cause).

In his Reply, Plaintiff admits that the *Collins* analysis applies, and argues he is entitled to relief under that rule. (Pl.'s Reply 5–6, 8, ECF No. 13.)  But Plaintiff has made no showing of any possible compensable harm flowing from § 902(a)(3).  Nor is it likely Plaintiff could, because the President's choice of Social Security Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. *Cf. Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions— which would not concern the President at all—would need to be undone . . . .  When an agency decision would not capture a President's attention, his removal authority could not make a difference.").  Indeed, District Courts in Ohio have preliminary determined that the allegedly unconstitutional nature of § 902(a)(3) does not require remand. *See*, *e.g.*, *Harriman v. Comm'r of Soc. Sec.*, No. 2:20-cv-6542, 2022 WL 109347, at *6–7 (S.D. Ohio Jan. 12, 2022); *Bowers v. Comm'r of Soc. Sec.,* No. 2;20-cv-6024, 2022 WL 34401, at *6–8 (S.D. Ohio Jan. 4, 2022); *Crawford v. Comm'r of Soc. Sec.,* No. 2:21-cv-726, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021); *Miley v. Comm'r of Soc. Sec.,* No. 1:20-cv-2550, 2021 WL 6064754, at 7–8 (N.D. Ohio Dec. 22, 2021); *Rhouma v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. 4:20-cv-2823, 2021 WL 5882671, at *9–11 (N.D. Ohio Dec. 13, 2021).  District Courts elsewhere have uniformly found the same. *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-

00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC(BLM), 2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021). The undersigned finds the reasoning of these cases persuasive and reaches the same result. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's second contention of error be **OVERRULED**.

## V. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report and Recommendation, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report and Recommendation or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review it *de novo*,

19

and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE